UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 19-CV-

EGLISE BAPTISTE BETHANIE DE
FT. LAUDERDALE, INC., a Florida
Not-For-Profit Corporation, and ANDY
SAINT-REMY,

Plaintiffs,

v.

THE SEMINOLE TRIBE OF FLORIDA and
AIDA AUGUSTE,

Defendants.

_____/

## VERIFIED COMPLAINT/JURY TRIAL DEMANDED
(Fla. Bar No. 133162)

Plaintiffs Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. ("Eglise Baptiste"), and

Andy Saint-Remy ("AS-R"), by their undersigned attorneys, sue Defendants The Seminole

Tribe Of Florida ("SemTribe") and Aida Auguste ("A-Auguste") and allege:

## SUBJECT-MATTER JURISDICTION

1. This is a civil action for damages under 42 U.S.C. § 1985(3), for which subject-

matter jurisdiction exists by virtue of 28 U.S.C. § 1343(a).   In addition, this is a civil action

for damages for interference with business relationships and trespass, for which supplemental

subject-matter jurisdiction exists by virtue of 28 U.S.C. § 1367.

<u>THE PARTIES</u>

2. Eglise Baptise is a Florida not-for-profit corporation and conducts business as a Haitian Baptist Church, which is affiliated with the Southern Baptist Convention and adheres to the congregationalist mode of Christian church governance. Its principal place of business is located at 2200 N.W. 12th Avenue, Fort Lauderdale, Florida 33311. Eglise Baptiste possesses fee simple title to the approximately ten (10) acres of improved (by a church structure) real property commonly known by the foregoing address and bearing Tax Identification Number 4942-28-32-0010 ("the Church Property"). The Church Property is situated outside the geographical boundaries of SemTribe's reservation in Hollywood, Florida.

3. AS-R is a citizen and resident of Broward County, Florida, and is not subject to any legal disabilities. He is the President and a Director and a member of Eglise Baptiste.

4. SemTribe is an Indian tribe which has been recognized by the United States Department of the Interior pursuant to 25 U.S.C. § 5123. The Supreme Court of the United States has characterized the several Indian tribes, such as SemTribe, as "dependent domestic sovereigns". SemTribe owns and maintains an Indian reservation in Hollywood, Florida, the geographical boundaries of which are demarcated in an aerial map, a copy of which is attached hereto as Exhibit "A" and the contents of which are incorporated herein by reference. SemTribe is governed by a Tribal Counsel, which is established by the Constitution And Bylaws of SemTribe, a copy of which is attached hereto as Exhibit "B" and

the contents of which are incorporated herein by reference. The Seminole Police Department ("the SPD") is an agency of SemTribe and operates under the supervision of the Tribal Council. By engaging in the conduct set forth in ¶ 12 of this Verified Complaint, SemTribe has waived its sovereign immunity from civil suit from, and liability in damages to, Eglise Baptiste and AS-R.

5. A-August is a citizen and resident of Broward County, Florida. She is not subject to any legal disabilities.

## VENUE

6. The venue of this civil action is properly laid in the Southern District of Florida because (a) SemTribe's principal place of business is located in that District, (b) A-August resides in that District and (c) Plaintiffs' causes of action arise in that District.

## CONDITIONS PRECEDENT

7. All conditions precedent to the commencement and prosecution to final judgment of this civil action have taken place, have been performed or have been waived or excused by SemTribe.

## ENGAGEMENT OF COUNSEL

8. Eglise Baptiste and AS-R have been compelled to engage the professional services of Metschlaw, P.A., for the purposes of preparing, commencing and prosecuting to final judgment this civil action. In this regard, Eglise Baptiste and AS-R have obligated themselves to pay to Metschlaw, P.A., a reasonable attorney's fee and to reimburse

Metschlaw, P.A.'s necessary, non-overhead, out-of-pocket expenditures.

## THE FACTS

9. Prior to his death on July 26, 2014, the Pastor of Eglise Baptise was the Rev. Usler Auguste ("Pastor Auguste"). Since then, the Board of Directors of Eglise Baptiste and A-Auguste (the widow of Pastor Auguste) have contended for the leadership of Eglise Baptiste.

10. On Sunday, September 22, 2019, a meeting of the congregation of Eglise Baptiste was called for the purpose of approving a process for the selection and installation of a successor to the late Pastor Auguste. Despite the peacemaking efforts of a mediator assigned to Eglise Baptiste by an affiliate of the Southern Baptist Convention, the September 22, 2019, congregational meeting devolved into a pushing, shoving and punching affair between the supporters of the Board of Directors and the supporters of A-Auguste. The Fort Lauderdale Police Department was summoned and its officers helped to restore order.

11. Eglise Baptiste, on September 24, 2019, filed a civil action for declaratory and injunctive relief against A-August in the Circuit Civil Division, Seventeenth Circuit Court, Broward County, Florida, which came to be styled *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Aida Auguste,* Case No. CACE-19-19270 (4) ("Case No. 19-19270"). Undersigned counsel in this action for Eglise Baptiste and AS-R commenced and continues to represent Eglise Baptiste in Case No. 19-19270. From the inception of Case No. 19-19270, the electronic service list for that civil action has included Attorney Edward Scott Golden (FBN 330442).

4

12.  On Sunday morning, September 29, 2019, Eglise Baptiste conducted its weekly Sabbath services in the structure located on the Church Property.  While those services were in progress, AS-R and her adherents, accompanied by six (6) armed (with handguns) individuals wearing SPD uniforms, without judicial authorization (a) entered the Church Property, (b) expelled all the worshipers, (c) changed the locks to the doors of the structure located on the Church Property, (d) seized the business records of Eglise Baptiste  and (e) locked the gates to the Church Property.

13.  A-Auguste and her supporters continue wrongfully to possess the real and personal property of Eglise Baptiste.  In Case No. 19-19270, Eglise Baptiste has filed a Verified First Amended Complaint against A-Auguste and her adherents seeking to regain possession of the personal and real property belonging to Eglise Bapitste.

<u>PLAINTIFFS' CLAIMS FOR RELIEF</u>

*COUNT I- CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS*

14.  Eglise Baptiste and AS-R reallege the matters set forth in ¶¶ 1 through 13 of this Verified Complaint.

15.  This is a claim for compensatory damages against SemTribe and A-Auguste for their violation of 42 U.S.C. § 1985(3).[1]

---

[1]  Section 1983(3), Title 42, U.S. Code, is entitled *Depriving persons of rights or privileges* and provides:

> If two or more persons in any State or Territory conspire or go
> in disguise on the highway or on the premises of another, for the

5

16. SemTribe and A-Auguste conspired to deprive Eglise Baptiste and AS-R of the equal protection of the laws and the privileges and immunities vouchsafed to Eglise Baptise and AS-R under the First and Fourteenth Amendments to the United States Constitution.

17. In furtherance of their foregoing conspiracy, SemTribe and A-Auguste committed the overt acts which are set forth in ¶ 12 of this Verified Complaint.

18. As the proximate result of the foregoing conspiracy, Eglise Baptiste and AS-R have suffered injuries in their persons and properties for which injuries they are entitled to recover compensatory damages from SemTribe and A-Auguste.

---

purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have any action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Wherefore Eglise Baptiste and AS-R respectfully request that the Court enter a final judgment for damages in their favor and against SemTribe and A-Auguste, jointly and severally, plus the costs of this civil action, including a reasonable attorneys' fee.

## COUNT II-INTERFERENCE WITH BUSINESS RELATIONSHIPS

19. Eglise Baptiste realleges the matters set forth in ¶¶ 1 through 13 of this Verified Complaint.

20. SemTribe and A-Auguste, with a bad motive and without justification, improperly and intentionally interfered with Eglise Baptiste's (business) relationships with its members when SemTribe and A-Auguste engaged in the conduct set forth in ¶ 12 of this Verified Complaint.

21. As the proximate result of the foregoing interference, Eglise Baptiste has suffered an injury in its business and property for which injury it is entitled to recover compensatory damages from SemTribe and A-Auguste.

Wherefore, Eglise Baptiste respectfully requests that the Court enter a final judgment for damages in its favor and against SemTribe and A-Auguste, jointly and severally, plus the costs of this civil action.

## COUNT III- TRESPASS

22. Eglise Baptiste realleges the matters set forth in ¶¶ 1 through 13 of this Verified Complaint.

23. SemTribe and A-Auguste, without authorization, entered on and, to the exclusion of Eglise Baptiste, seized the Church Property and thereby committed a trespass.

24. As the proximate result of the conduct set forth in ¶¶ 12 and 23 of this Verified Complaint, Eglise Baptiste has sustained an injury in its business and property for which injury it is entitled to recover compensatory damages from SemTribe and A-Auguste.

Wherefore, Eglise Baptiste respectfully requests that the Court enter a final judgment for damages in its favor and against SemTribe and A. Auguste, jointly and severally, plus the costs of this civil action.

METSCHLAW, P.A.
Attorneys for Eglise Baptiste and AS-R
20801 Biscayne Blvd., Ste. 300
Aventura, FL 33180-1423
Telephone: (305) 792-2540
Telecopier: (305) 792-2541
E-Mail: l.metsch@metsch.com

by _____
LAWRENCE R. METSCH
FBN 133162

## VERIFICATION

I, Andy Saint-Remy, under penalty of perjury, declare that:

1. I am the individual Plaintiff in the above styled civil action and the President of Plaintiff Eglise Baptiste Bethanie De Ft. Lauderdale, Inc.

2. I have read the foregoing Verified Complaint and confirm that the factual matters

set forth therein are true and correct.

ANDY SAINT-REMY

# EXHIBIT "A"



# EXHIBIT "B"

# UNITED STATES
# DEPARTMENT OF THE INTERIOR
## BUREAU OF INDIAN AFFAIRS

✦

# CONSTITUTION AND BYLAWS
### OF THE
# SEMINOLE TRIBE OF FLORIDA

✦

### RATIFIED AUGUST 21, 1957



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1958

Law of
Indian Tribes
Seminole Tribe
of Florida
c.4

*27 Jan, 1956*

# CONSTITUTION AND BYLAWS OF THE SEMINOLE TRIBE OF FLORIDA

## PREAMBLE

We, the members of the Seminole Tribe of Florida, in order to promote justice, insure tranquility, encourage the general welfare, safeguard our interests and secure the blessings of freedom and liberty for ourselves and for our posterity, do hereby form and organize a Seminole Tribal Council and we do ordain and establish this Constitution and set of Bylaws as the rules for its deliberation.

## ARTICLE I—TERRITORY

The jurisdiction of the Seminole Tribe of Florida shall include all lands within the Dania, Big Cypress, and Brighton Reservations, the title to which is held by the United States in trust for the Seminole Tribe of Florida, or by the United States in trust for the Seminole Indians in Florida, lands held under Executive Order No. 1379, dated June 28, 1911, and such other lands as may hereafter be acquired for the use and benefit of the Seminole Tribe of Florida.

## ARTICLE II—MEMBERSHIP

The membership of the Seminole Tribe of Florida shall consist of the following:

SECTION 1. Any person of Seminole Indian blood whose name appears on the Census Roll of the Seminole Agency of January 1, 1957, shall be eligible for enrollment, regardless of blood quantum or place of residence, upon written application to the Tribal Council, provided, that within five years after the approval of this Constitution and Bylaws the Census Roll may be corrected by the Seminole Tribal Council.

SEC. 2. Any child, of Seminole Indian blood, born to a parent or parents either or both whose names appear on the Census Roll of the Seminole Agency of January 1, 1957, shall be eligible for enrollment, regardless of blood quantum or place of residence, upon written application to the Tribal Council.

SEC. 3. Any descendant of Seminole Indian blood of a person whose name appears on the Census Roll of the Seminole Agency of January 1, 1957, shall be eligible for enrollment, regardless of blood quantum

446879—58 (1)

or place of residence, upon written application to the Tribal Council.

Sec. 4. In the event the applicant is a minor, the application may be prepared and presented by the parent or parents of the minor, or by any adult relative having knowledge of the minor's eligibility.

Sec. 5. The Tribal Council shall have the power to pass ordinances, which are consistent with and pursuant to this Constitution, governing future membership, loss of membership and the adoption of members into the Seminole Tribe of Florida, which ordinances shall be subject to the approval of the Secretary of the Interior, or his authorized representative.

## Article III—Organization of Governing Body

Section 1. The governing body of the Seminole Tribe of Florida shall be known as the Tribal Council and shall consist of eight (8) members elected by secret ballot as provided in Article IV, Section 8.

Sec. 2. The Tribal Council shall select from within its membership a Chairman and Vice-Chairman. It shall also select from within or without the membership of the tribe a Secretary and a Treasurer and such committees as may be deemed necessary. All officers and committees so selected shall hold office for a period of two years or until the next election of councilmen as provided in Article IV, Section 4.

Sec. 3. The members of the Tribal Council shall be qualified voters of the Seminole Tribe of Florida, 21 years of age and over. They shall take office the first Monday in the month immediately following the election.

## Article IV—Nominations and Elections

Section 1. (a) The first election of the Tribal Council hereunder shall be called and held within thirty (30) days following the adoption and approval of the Constitution and Bylaws under the supervision of the Constitutional Committee and the Superintendent of the Seminole Agency.

(b) For the purpose of the first election of Tribal Council representatives, any person, 21 years of age and over, whose name appears on the Census Roll of the Seminole Agency of January 1, 1957, shall be eligible to vote as a tribal member or to hold office as a Tribal Council representative.

Sec. 2. In any election of the Seminole Tribe after the election to adopt the Constitution and Bylaws and to elect the first Tribal Council, eligible voters shall be enrolled members of the tribe 18 years of age and over. Resident voters shall register with the reservation of their domicile or residence. Where this constitution provides for

election of representatives or candidates from a particular reservation, only voters registered with such reservation shall be eligible to participate in the election of such representatives or candidates. Nonresident voters may register with the reservation of their affiliation or they may choose to register as nonresident voters. Nonresident voters shall not vote for reservation representatives.

SEC. 3. The Dania, Big Cypress and Brighton Reservations shall each have on the Tribal Council one reservation representative. Each candidate for the office of reservation representative must have been continuously a resident of his or her reservation for a period of at least six (6) months immediately preceding the election in which he or she may be a candidate. In addition to the reservations' representatives there shall be elected five (5) at-large members of the Tribal Council, two (2) of whom shall be nonresidents of the reservations herein referred to, but who are otherwise eligible to hold office. The Tribal Council of the tribe may, if a new area be acquired or set aside for the Seminole Tribe of Florida, cause additional reservation representatives and at-large representatives to be established.

SEC. 4. The candidates in the first election shall hold office as follows:

(a) The successful candidate from each reservation receiving the largest number of votes shall hold office for four (4) years.

(b) The successful nonresident at-large candidate receiving the largest number of votes shall hold office for four (4) years. The other successful candidates shall hold office for two (2) years.

The candidates in all succeeding elections shall hold office for a period of four (4) years.

SEC. 5. The Tribal Council may by an affirmative vote of a majority remove any official or councilman from office who fails to carry out his Tribal Council responsibilities, or is found guilty of a misdemeanor involving moral turpitude or a felony in any county, State or Federal Court, or for gross neglect of duty or misconduct reflecting on the dignity and integrity of the Tribal Council. Each reservation, by petition signed by twenty percent (20%) of the eligible voters, may request the recall of such reservation representative by the Tribal Council. The recall of at-large representatives shall be by petition signed by twenty-five (25) eligible voters from any reservation or nonresident eligible voters.

Before any vote of recall or removal is taken, the member or official shall be given a written statement of all charges filed against him at least ten (10) days before the meeting of the Tribal Council before which he is to appear and he shall be given an opportunity to answer

any and all written charges at such meeting.   The decision of the Tribal Council shall be final.

SEC. 6. The Tribal Council may by an affirmative vote of a majority appoint a replacement to fill the unexpired term of the removed councilman or official, whether involuntarily removed or by death or resignation.  In the event the vacated position is that of a reservation representative, the replacement shall be selected from said reservation.  In the event the vacated council position is a nonresident at-large position, the replacement shall be a nonresident member eligible to hold office, and any other vacant at-large position may be filled by an eligible resident or nonresident member of the tribe.

SEC. 7. Any qualified member of the Seminole Tribe of Florida may announce his or her candidacy for Tribal Council, such announcement to be in writing and supported by the signature of at least ten (10) eligible voters from the reservation from which he resides or in the case of an at-large candidate, his announcement must also be in writing and supported by ten (10) eligible voters from any reservation or off reservation.  All announcements shall be presented to the Secretary of the Tribal Council at least twenty (20) days prior to the date of election.  It shall be the duty of the Secretary of the Tribal Council to post in at least one public place on each reservation and publish at least once in a newspaper of general circulation at least fifteen (15) days before the election the names of the candidates for Tribal Council.

SEC. 8. After the first election is held an election by secret ballot shall be held every two (2) years.  The Tribal Council, subject to the review of the Secretary of the Interior, or his authorized representative, shall enact an ordinance wherein the ballot, eligibility of voters, voting lists, rules for calling elections, absentee balloting procedures, selection of election officials, polling places, dates and such other pertinent factors shall be prescribed.  In the event the Tribal Council does not call an election as herein provided, the Secretary of the Interior, within sixty (60) days after the regular election date, may call such an election.

SEC. 9. Upon receipt of a petition signed by twenty (20) percent of the eligible voters, or by an affirmative vote of a majority of the Tribal Council members, any enacted or proposed ordinance or resolution of the Tribal Colncil shall be submitted to a referendum of the eligible voters of the tribe.  The majority of the votes cast in such referendum shall be conclusive and binding on the Tribal Council.  The Tribal Council shall call such referendum and prescribe the manner of conducting the vote.

## ARTICLE V—POWERS OF TRIBAL COUNCIL

In addition to all powers vested in the Seminole Tribal Council by existing law, the Tribal Council of the Seminole Tribe of Florida shall exercise the following powers, subject to any limitation imposed by the Constitution or the Statutes of the United States, and subject further to all expressed restriction upon such powers contained in this Constitution and Bylaws.

SECTION 1. To negotiate with the Federal, State and local governments and others on behalf of the tribe and to advise and consult with the representatives of the Department of the Interior on all activities of the Department which may affect the Seminole Tribe of Florida, excepting those tribal affairs which may hereafter be specifically delegated under the provisions of the Charter of the Seminole Tribe.

SEC. 2. To employ legal counsel for the protection of the rights of the tribe and its members, the choice of counsel and fixing of fees to be subject to the approval of the Secretary of the Interior, or his authorized representative.

SEC. 3. To manage and lease or otherwise deal with tribal lands and communal resources in accordance with law and to prevent the sale, disposition, lease or encumbrance of tribal lands, interest in lands, or other tribal assets without the consent of the tribe.

SEC. 4. To advise with the Secretary of the Interior, or his authorized representative, with regard to all appropriation estimates or Federal projects for the benefit of the Seminole Indians of Florida prior to the submission of such estimates to the Bureau of the Budget and the Congress.

SEC. 5. (a) To administer any funds within the control of the tribe; to make expenditures from available funds for tribal purposes, including salaries and expenses of tribal officials or employees; subject, however, to the condition that this authority shall not extend over the responsibilities and authorities specifically delegated to the Board of Directors by the Charter of the tribe. All expenditures of tribal funds under control of the Tribal Council shall be by resolution duly approved by a majority of the Tribal Council in legal session and the amounts so expended shall be a matter of public record at all times.

(b) The Tribal Council, subject to the approval of the Secretary of the Interior, or his authorized representative, shall prepare annual budget requests for the advancement to the control of the tribe such money as is now or may hereafter be deposited to the credit of the tribe in the United States Treasury or which may hereafter be appropriated for the use of the tribe.

SEC. 6. To make and enforce ordinances, subject to the review of the Secretary of the Interior, or his authorized representative, covering the tribe's right to levy taxes and license fees on persons or organizations doing business on the reservation.

SEC. 7. To promote public health, education, charity, and such other services as may contribute to the social advancement of the members of the Seminole Tribe of Florida.

SEC. 8. To adopt resolutions regulating the procedures of the Seminole Tribal Council, its officials and committees in the conduct of tribal affairs.

SEC. 9. (a) No authorities contained in this Constitution may be delegated by the Seminole Tribal Council to tribal officials, district councils, or associations to carry out any function for which the Tribal Council assumes primary responsibility, except by ordinance or resolution duly enacted by the Tribal Council in legal session, and excepting also those specific requirements contained in the Bylaws of the Seminole Tribe of Florida.

(b) The Seminole Tribal Council is hereby authorized to recognize any district committees, associations or other organization open to the members of the Seminole Tribe of Florida and to approve such organizations, subject, however, to the provision that no such committee, association or organization may assume authorities specifically granted to the Seminole Tribal Council unless by a proper delegation of authority by the Seminole Tribal Council.

SEC. 10. To deposit to the credit of the Seminole Tribe of Florida tribal funds, without limitation on the amount in any account, in any National or State bank whose deposits are insured by any agency of the Federal Government; provided, that funds advanced to the tribe from funds held in trust in the United States Treasury shall be deposited with a bonded disbursing officer of the United States whenever the conditions prescribed by the Secretary of the Interior, or his authorized representative in connection with such advance require that the advance be so deposited.

## ARTICLE VI—MANNER OF REVIEW

SECTION 1. Any resolution or ordinance which by the terms of this Constitution and Bylaws is subject to review by the Secretary of the Interior, or his authorized representative, shall be presented to the Superintendent of the reservation within ten (10) days of its enactment. The Superintendent shall within ten (10) days after its receipt approve or disapprove the same.

If the Superintendent shall approve any ordinance or resolution, it shall thereupon become effective, but the Superintendent shall

transmit a copy of the same, bearing his endorsement, to the Secretary of the Interior, who may within ninety (90) days from the date of enactment rescind the said ordinance or resolution for any cause, by notifying the Tribal Council of such decision.

If the Superintendent shall refuse to approve any ordinance or resolution submitted to him, within ten (10) days after its receipt, he shall advise the Tribal Council of his reason therefor. If the reasons appear to the Tribal Council to be insufficient it may, by a majority vote, refer the ordinance or resolution to the Secretary of the Interior who may within ninety (90) days from the enactment of the resolution of referral, approve or disapprove same in writing, provided however no such ordinance shall become effective until approved by the Secretary of the Interior or his duly authorized representative.

SEC. 2. Any resolution or ordinance by the terms of this Constitution and Bylaws that is subject to the approval of the Secretary of the Interior, or his authorized representative, shall be presented to the Superintendent who shall transmit the same to the Secretary with his recommendations as to the merits of the proposals.

The said ordinance or resolution shall *not* become effective until it shall have been approved by the Secretary of the Interior, or his duly authorized representative.

## ARTICLE VII—AMENDMENTS

Whenever the Tribal Council, by a unanimous vote of all members, or the tribal membership by a petition signed by twenty (20) percent of the eligible voters, calls for the submission of an amendment, the Secretary of the Interior shall call an election upon the proposed amendment to the Constitution and Bylaws. If at such election the amendment is adopted by a majority vote of the qualified voters of the tribe voting therein, and if at least thirty (30) percent of those entitled to vote shall vote, such amendment shall be submitted to the Secretary of the Interior and, if approved by him, shall thereupon take effect.

# BYLAWS OF THE SEMINOLE TRIBE OF FLORIDA

## ARTICLE I—DUTIES OF OFFICERS

SECTION 1. The Chairman of the Tribal Council shall preside over all meetings of the council and exercise any authority specifically delegated to him as provided in Article V, Section 9, of the Constitution. The Chairman shall not vote on any issue before the council except only in the case of a tie.

SEC. 2. The Vice-Chairman shall assist the Chairman when called on to do so, and in the absence of the Chairman shall preside and when so presiding shall have all the privileges, duties and responsibilities delegated to the Chairman. In the absence of the Secretary, the Vice-Chairman shall assume all the duties and responsibilities of the Secretary.

SEC. 3. The Secretary shall cause to be prepared all minutes, resolutions and ordinances enacted at all metings and forward copies, in every instance, to the Superintendent. In addition to the duties prescribed pursuant to Article V, Section 8, the Secretary shall maintain all files, records, and correspondence of the Tribal Council in an orderly manner for the convenience of the Tribal Council and exercise such other duties as may be specifically delegated to him.

SEC. 4. (a) The tribal Treasurer shall accept, receive, receipt for, preserve and safeguard all funds in the custody of the tribe from whatever source. He shall deposit all funds in such bank, or elsewhere as directed by the Tribal Council in accordance with Article V, Section 10 and shall cause to be made and preserved a faithful record of such funds and shall report on all receipts and expenditures and the amount and nature of all funds in his possession or custody, such report to be made in writing and filed with the Secretary at each regular meeting of the Tribal Council and at such other times as requested by the Tribal Council.

(b) He shall not pay out or otherwise disburse any funds in his possession or custody, or in the possession or custody of the Tribal Council, except when properly authorized to do so by a duly enacted resolution.

(c) The books and records of the tribal Treasurer shall be audited at least once every year by a comepetent auditor employed by the council and at such other time as the council or the Commissioner of Indian Affairs or his authorized representative may direct. In addition to the copies prepared for the governing body, one copy of the audit shall be prepared for the Superintendent, one copy for the Area Director and one copy for the Commissioner of Indian Affairs.

(d) The tribal Treasurer shall be required to give a bond satisfactory to the Tribal Council and the Commissioner of Indian Affaris, or his authorized representative, and make such provisions for carrying out the Tribal Council directives in the manner and method for custody and disbursement of funds as shall guarantee their safety, proper disbursement and use.

## ARTICLE II—OATH OF OFFICE

SECTION 1. All duly elected members of the Tribal Council who have been certified shall be installed as provided in Article III, Section 3, upon subscribing to the following oath to be administered by the Superintendent:

"I, ————————————————, do solemnly swear that I will support and defend the Constitution of the United States against all enemies; that I will faithfully and impartially carry out the duties of my office to the best of my ability; that I will cooperate, promote, and protect the best interest of the tribe, in accordance with the Constitution and Bylaws of the Seminole Tribe of Florida."

## ARTICLE III—SALARIES AND REMUNERATIONS

SECTION 1. The Tribal Council may prescribe such salaries and remunerations pursuant to the provision of Article V, Section 5, as may be available and necessary to carry on its responsibilities and the responsibilities of its officials and employees.

## ARTICLE IV—ORDINANCES AND RESOLUTIONS

SECTION 1. All final decisions of the Tribal Council on matters of general and permanent interest to members of the tribe and to tribal administration shall be embodied in ordinances. Each ordinance shall be numbered consecutively beginning with Number 1. Such enactments shall be available for public inspection.

SEC. 2. All final decisions of the Tribal Council on matters of temporary interest or relating to particular individuals, officials or committees shall be embodied in resolutions. Such resolutions shall be numbered consecutively beginning with Number 1 and shall also be subject to public inspection.

## ARTICLE V—MEETINGS

SECTION 1. The date and place of regular meetings of the Tribal Council shall be on the first Monday of each month at the Seminole Agency headquarters, and such meetings will convene at 10:00 a. m. Special meetings shall be called by the Chairman by written notice setting time, place, and date of meeting and the purpose of such meeting. No special meeting shall be called except on matters of serious concern to the Tribal Council.

SEC. 2. A quorum of five members shall constitute a quorum and no official actions shall be transacted in the absence of a quorum at any time.

## ARTICLE VI—ORDER OF BUSINESS

SECTION 1. The order of business of the Tribal Council shall be:
   (a)  call to order by Chairman
   (b)  roll call
   (c)  reading of minutes of last meeting
   (d)  unfinished business
   (e)  reports
   (f)  new business
   (g)  adjournment

## ARTICLE VII—RATIFICATION

This Constitution and Bylaws, when approved by the Secretary of the Interior, shall be effective from and after the date of its ratification by a majority vote of adult Indians of the Seminole Tribe of Florida voting at an election called for that purpose by the Secretary of the Interior; Provided, that at least 30 percent of those entitled to vote shall vote in such an election.

For the purpose of this election any adult 21 years of age and over whose name appears on the Census Roll of the Seminole Agency of January 1, 1957, shall be eligible to vote. A voting list of such eligible persons shall be prepared by the Constitutional Committee and the Superintendent.

### APPROVAL

I, ROGER ERNST, Assistant Secretary of the Interior of the United States of America, by virtue of the authority granted me by the Act of June 18, 1934 (48 Stat. 984), as amended by the Act of June 15, 1935 (49 Stat. 378), do hereby approve the attached Constitution and Bylaws of the Seminole Tribe of Florida, subject to ratification by the Tribe in the manner therein provided.

Upon ratification of this Constitution and Bylaws, all rules and regulations heretofore promulgated by the Interior Department or by the Bureau of Indian Affairs, so far as they may be incompatible with any of the provisions of the said Constitution and Bylaws, are declared inapplicable to the Seminole Tribe of Florida.

All officers and employees of the Interior Department are ordered to abide by the provisions of the said Constitution and Bylaws.

Approval Recommended:
   GLENN L. EMMONS
*Commissioner of Indian Affairs*

                    ROGER ERNST
             *Assistant Secretary of the Interior.*
                  (SEAL)

WASHINGTON, D. C., *July 11, 1957*

## CERTIFICATE OF RATIFICATION

Pursuant to Section 16 of the Act of June 18, 1934 (48 Stat. 984), as amended by the Act of June 15, 1935 (49 Stat. 378), the attached Constitution and Bylaws approved on July 11, 1957, by Roger Ernst, Assistant Secretary of the Interior was submitted for ratification to the adult Indians of the Seminole Tribe of Florida and was on August 21, 1957, ratified by a vote of 241 for, and 5 against, in an election in which at least 30 percent of those entitled to vote cast their ballots.

BILL OSCEOLA
*Chairman, Constitutional Committee*
MIKE OSCEOLA
*Secretary, Constitutional Committee*

K. A. MARMON
*Superintendent, Seminole Agency*