UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 19-CV-62591-BLOOM/VALLE

EGLISE BAPTISTE BETHANIE DE FT.
LAUDERDALE, INC., etc., et al.,

                  Plaintiffs,

v.

THE SEMINOLE TRIBE OF FLORIDA,
et al.,

                  Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE
MOTION OF DEFENDANT THE SEMINOLE TRIBE OF
FLORIDA TO DISMISS: TRIBAL SOVEREIGN IMMUNITY**
(Fla. Bar No. 133162)

I <u>INTRODUCTION</u>

On November 14, 2019, Defendant The Seminole Tribe Of Florida ("SemTribe") moved pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, to dismiss the complaint in the above styled civil action on the basis of SemTribe's claimed tribal sovereign immunity from suit and liability. [ECF 8] Because the judge-made doctrine of tribal sovereign immunity should not be extended to the extraordinary and outrageous facts of this case, Plaintiffs Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. ("Eglise Baptiste") and Andy Saint-Remy ("Saint-Remy") request that SemTribe's dismissal motion be denied.

## II THE FACTS

In their complaint in this civil action, Plaintiffs in pertinent part allege:

2. Eglise Baptiste is a Florida not-for-profit corporation and conducts business as a Haitian Baptist Church, which is affiliated with the Southern Baptist Convention and adheres to the congregationalist mode of Christian church governance. Its principal place of business is located at 2200 N.W. 12th Avenue, Fort Lauderdale, Florida 33311. Eglise Baptiste possesses fee simple title to the approximately ten (10) acres of improved (by a church structure) real property commonly known by the foregoing address and bearing Tax Identification Number 4942-28-32-0010 ("the Church Property"). The Church Property is situated outside the geographical boundaries of SemTribe's reservation in Hollywood, Florida.

3 [Andy Saint-Remy] is a citizen and resident of Broward County, Florida, and is not subject to any legal disabilities. He is the President and a Director and a member of Eglise Baptiste.

4. SemTribe is an Indian tribe which has been recognized by the United States Department of the Interior pursuant to 25 U.S.C. § 5123. The Supreme Court of the United States has characterized the several Indian tribes, such as SemTribe, as "dependent domestic sovereigns". SemTribe owns and maintains an Indian reservation in Hollywood, Florida, the geographical boundaries of which are demarcated in an aerial map, a copy of which is attached hereto as Exhibit "A" and the contents of which are incorporated herein by reference. SemTribe is governed by a Tribal Counsel, which is established by the Constitution And Bylaws of SemTribe, a copy of which is attached hereto as Exhibit "B" and the contents of which are incorporated herein by reference. The Seminole Police Department ("the SPD") is an agency of SemTribe and operates under the supervision of the Tribal Council. By engaging in the conduct set forth in ¶ 12 of this Verified Complaint, SemTribe has waived its sovereign immunity from civil suit from, and liability in damages to, Eglise Baptiste and AS-R.

5. [Aida Auguste] is a citizen and resident of Broward County, Florida. She is not subject to any legal disabilities.

    \* \* \* \* \* \* \* \*

9. Prior to his death on July 26, 2014, the Pastor of Eglise Baptise was the Rev. Usler Auguste ("Pastor Auguste"). Since then, the Board of Directors of Eglise Baptiste and A-Auguste (the widow of Pastor Auguste) have contended for the leadership of Eglise Baptiste.

10. On Sunday, September 22, 2019, a meeting of the congregation of Eglise Baptiste was called for the purpose of approving a process for the selection and installation of a successor to the late Pastor Auguste. Despite the peacemaking efforts of a mediator assigned to Eglise Baptiste by an affiliate of the Southern Baptist Convention, the September 22, 2019, congregational meeting devolved into a pushing, shoving and punching affair between the supporters of the Board of Directors and the supporters of A-Auguste. The Fort Lauderdale Police Department was summoned and its officers helped to restore order.

11. Eglise Baptiste, on September 24, 2019, filed a civil action for declaratory and injunctive relief against A-August in the Circuit Civil Division, Seventeenth Circuit Court, Broward County, Florida, which came to be styled *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Aida Auguste,* Case No. CACE-19-19270 (4) ("Case No. 19-19270"). Undersigned counsel in this action for Eglise Baptiste and AS-R commenced and continues to represent Eglise Baptiste in Case No. 19-19270. From the inception of Case No. 19-19270, the electronic service list for that civil action has included Attorney Edward Scott Golden (FBN 330442).

12. On Sunday morning, September 29, 2019, Eglise Baptiste conducted its weekly Sabbath services in the structure located on the Church Property. While those services were in progress, A-Auguste and her adherents, accompanied by six (6) armed (with handguns) individuals wearing SPD uniforms, without judicial authorization (a) entered the Church Property, (b)

expelled all the worshipers, (c) changed the locks to the doors of the structure located on the Church Property, (d) seized the business records of Eglise Baptiste and (e) locked the gates to the Church Property.

13. A-Auguste and her supporters continue wrongfully to possess the real and personal property of Eglise Baptiste. In Case No. 19-19270, Eglise Baptiste has filed a Verified First Amended Complaint against A-Auguste and her adherents seeking to regain possession of the personal and real property belonging to Eglise Baptiste.

## III THE QUESTION PRESENTED

Is SemTribe insulated from this suit under the doctrine of tribal sovereign immunity?

Plaintiffs respectfully urge that the foregoing question be answered in the negative and SemTribe's dismissal motion be denied.

## IV DISCUSSION

### A.  *Michigan v. Bay Mills Indian Community*

In *Michigan v. Bay Mills Indian Community,* 572 U.S. 782, 134 S. Ct. 2024 (2014), the State of Michigan brought suit to enjoin an Indian tribe from operating a casino on land located outside its reservation that it had purchased with earnings from a congressionally established land trust. The U.S. District Court for the Western District of Michigan granted a preliminary injunction, but the U.S. Court of Appeals for the Sixth Circuit vacated the injunction and remanded on the basis of the tribe's sovereign immunity. The U.S. Supreme Court granted Michigan's certiorari petition and, in a 5-4 decision, affirmed the judgment of the Court of Appeals. Justice Kagan's majority opinion declared:

> The question in this case is whether tribal sovereign immunity bars Michigan's suit against the Bay Mills Indian Community for operating a casino outside Indian lands. We hold that immunity protects Bay Mills from this legal action. Congress has not abrogated tribal sovereign immunity from a State's suit to enjoin gaming off a reservation or other Indian lands. And we decline to revisit our prior decisions holding that, absent such an abrogation (or a waiver), Indian tribes have immunity even when a suit arises from off-reservation *commercial* activity. Michigan must therefore resort to other mechanisms, including legal actions against the responsible individuals, to resolve this dispute. (Emphasis supplied)

572 U.S. at 785, 134 S. Ct. at 2028.

Footnote 8 to Justice Kagan's majority opinion observed:

> Adhering to *stare decisis* is particularly appropriate here given that the State, as we have shown, has many alternative remedies: It has no need to sue the Tribe to right the wrong it alleges... We need not consider whether the situation would be different if no alternative remedies were available. *We have never, for example, specifically addressed (nor, so far as we are aware, has Congress) whether immunity should apply in the ordinary way if a tort victim, or other plaintiff who has not chosen to deal with a tribe, has no alternative way to obtain relief for off-reservation commercial conduct.* The argument that such cases would present a "special justification" for abandoning precedent is not before us. *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984). (Emphasis supplied)

572 U.S. at 799, 134 S. Ct. at 2036.

The gist of Justice Thomas's dissenting opinion (in which Justices Scalia, Ginsburg and Alito joined) follows:

> In *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 118 S. Ct. 1700 (1998), this Court extended the judge-made doctrine of tribal sovereign immunity to bar

5

> suits arising out of an Indian tribe's commercial activities conducted outside its territory. That was error. Such an expansion of tribal immunity is unsupported by any rationale for that doctrine, inconsistent with the limits on tribal sovereignty, and an affront to state sovereignty.

572 U.S. at 814, 134 S. Ct. at 2045.

Because it is impossible to characterize SemTribe's September 29, 2019, assault on Eglise Baptiste's property and its worshipers as a "commercial activity", this case cries out for the "special justification" referred to in Footnote 8, *supra*.

    B.    *Wilkes v. PCI Gaming Authority.*

In *Wilkes v. PCI Gaming Authority*, ___ So. 3d ___, 2017 WL 4385738 (Ala. 2017), *cert. denied Poarch Bank of Creek Indians v. Wilkes*, ___ U.S. ___, 139 S. Ct. 2739 (2019), a motorist and passenger brought a civil action against a drunken truck driver and the driver's employer, a casino and hotel owned by an Indian tribe, raising negligence and wantonness claims and seeking compensation for injuries sustained in a head-on collision eight miles away from the casino and hotel. The Alabama State Trial Court entered summary judgment for the defendants on the basis of tribal sovereign immunity and the plaintiffs appealed.

The Supreme Court of Alabama reversed. Chief Justice Stewart's opinion observed:

> In light of the fact that the Supreme Court of the United States has expressly acknowledged that it has never applied tribal sovereign immunity in a situation such as this, we decline to extend the doctrine beyond the circumstances to which that Court itself has applied it; accordingly, we hold that the doctrine of tribal sovereign immunity affords the tribal defendants no protection from the claims asserted by Wilkes and Russell. As Justice Stevens aptly explained in his dissent in *Kiowa*, a

contrary holding would be contrary to the interests of justice, especially inasmuch as the tort victims in this case had no opportunity to negotiate with the tribal defendants for a waiver of immunity. *See, Kiowa*, 523 U.S. at 766, 118 S. Ct. 1700 (Stevens, J., dissenting) ("[T[he rule [set forth by the majority] is unjust. This is especially so with respect to tort victims who have no opportunity to negotiate for a waiver of sovereign immunity, yet nothing in the Court's reasoning limits the rule to lawsuits arising out of voluntary contractual relationships. Governments, like individuals, should pay their debts and should be held accountable for their unlawful, injurious conduct.").

Wilkes and Russell did not voluntarily choose to engage in a transaction with the tribal defendants; rather, they were merely traveling on the public roads of this State when they were injured in an automobile accident involving- and, by all accounts, caused by- a Wind Creek-Wetumpka employee driving a Wind Creek-Wetumpka vehicle. Thus, to the extent the *Bay Mills* Court buttressed its decision affording tribal sovereign immunity to tribes with regard to claims stemming from a tribe's commercial activities by reasoning that plaintiffs could "bargain for a waiver of immunity" beforehand, 572 U.S. at 796, 134 S. Ct. at 2035, that rationale has no application to the tort claims asserted by Wilkes and Russell. Moreover, for the reasons explained by Justice Thomas in his dissent in *Bay Mills*, we likewise conclude that none of the other rationales offered by the majority in *Bay Mills* as support for continuing to apply the doctrine of tribal sovereign immunity to tribes' off-reservation commercial activities sufficiently outweigh the interests of justice so as to merit extending that doctrine to shield tribes from *tort* claims asserted by individuals who have no personal or commercial relationship to the tribe. *See, Bay Mills,* 572 U.S. at 813-830, 134 S. Ct. at 2045-55 (Thomas, J., dissenting) (explaining that the doctrine of tribal sovereign immunity as articulated by the Supreme Court in *Kiowa* lacks "substantive justification" and the majority's reasons for continuing to uphold the doctrine- deference to Congress, *stare decisis*, etc.- are insufficient in light of that lack of a justification, and the "unfairness and conflict it has engendered").

___ So. 3d at ___, 2017 WL 4385738, *4.

    C.    *Harrison v. PCI Gaming Authority*

In *Harrison v. PCI Gaming Authority,* 251 So. 3d 24 (Ala. 2017), the Alabama State Trial Court dismissed a wrongful death claim against the Poarch Bank of Creek Indians on the basis of tribal sovereign immunity. On appeal, the Supreme Court of Alabama reversed. The Alabama Supreme Court reviewed the United States Supreme Court's decisions in *Kiowa* and *Bay Mills, supra,* and reasoned:

> Reflecting the concerns expressed above, and in the interest of justice, this Court today in the case of *Wilkes, supra,* declines to extend the doctrine of tribal immunity to actions in tort, in which the plaintiff has no opportunity to bargain for a waiver and no other avenue for relief. Based on the foregoing and on our holding in *Wilkes,* we similarly conclude that the judgment entered by the trial court in the present case- extending to the tribal defendants immunity from responsibility for the life-ending injuries to Benjamin allegedly caused by their negligent or wanton serving of alcohol to a visibly intoxicated person- is due to be reversed...

251 So. 3d at 33.

V <u>ARGUMENT</u>

In this civil action, SemTribe should not be protected by the tribal sovereign immunity doctrine because:

> (1) on Sunday, September 29, 2019, SemTribe's uniformed and armed police officers traveled more than 11 miles from the Hollywood Indian Reservation ("Indian country") to Eglise Baptiste's real property in Fort Lauderdale, Florida ("non-Indian

country");

(2) prior to Sunday, September 29, 2019, Eglise Baptiste and Saint-Remy had not had an opportunity to negotiate with SemTribe for a waiver of SemTribe's tribal sovereign immunity; and

(3) other than through this civil action, Eglise Baptiste and Saint-Remy have no means by which to secure monetary compensation for SemTribe's infringement of Plaintiffs' rights, privileges and immunities under Federal and Florida law.

VI  CONCLUSION

SemTribe's motion to dismiss the complaint should be denied.

Respectfully submitted,

METSCHLAW, P.A.
Attorneys for Eglise Baptiste and Saint-Remy
20801 Biscayne Blvd., Ste. 300
Aventura, FL 33180-1423
Telephone: (305) 792-2540
Telecopier: (305) 792-2541
E-Mail: l.metsch@metsch.com

by _____
LAWRENCE R. METSCH
FBN 133162

CERTIFICATE OF SERVICE

I hereby certify that, using the District Court's CM/ECF facility, true copies of the foregoing response have been electronically served this ___ day of November, 2019, on:

9

Mark D. Schellhase, Esq.
GrayRobinson, P.A.
225 NE Mizner Boulevard
Suite 500
Boca Raton, FL 33432
E-Mail: mark.schellhase@gray-robinson.com
E-Mail: ingrid.reichel@gray-robinson.com

Mark C. Johnson, Esq.
Abdul-Sumi Dalal, Esq.
Johnson|Dalal
111 N. Pine Island Road, Suite 103
Plantation, FL 33324
E-Mail: MJ@JohnsonDalal.com
E-Mail: JT@Johnson|Dalal.com
E-Mail: Service@Johnson|Dalal.com

_/s/ Lawrence R. Metsch_
LAWRENCE R. METSCH